CURTIS LEWIS, plaintiff in error, vs. RICHARD WAYNE, adm'r, &c., defendant in error.

L. gives a mortgage to secure H. & H. for certain funds advanced by them for him, before that time, as well as to indemnify and save them harmless for any advances acceptances, or endorsements, made thereafter by the mortgagees for and on account of the mortgagor.

*Held,* That upon the production by mortgagees of drafts and acceptances, corresponding to the description of indebtedness, specified in the instrument that the presumption was that they had been paid by the holders out of their own funds, and upon the credit of the mortgage and not out of the funds of the drawers.

Foreclosure of mortgage, from Spalding county.  Decision by Judge CABINESS, at November Term, 1857.

This was a proceeding by Richard Wayne, administrator of Robert H. Griffin, deceased, assignee of Hamilton & Hardeman, to forclose a mortgage of a house and lot, executed by Curtis Lewis to said Hamilton & Hardeman.

The mortgage bears date 1st June, 1849, and was made by Lewis to secure Hamilton & Hardeman for certain funds, before that time, advanced, as well as to indemnify and save them harmless for any advances, acceptances or endorsements, made thereafter by them for and on account of said mortgagor.

The usual *rule nisi* was issued and served upon the mortgagor, who appeared and showed for cause why judgment absolute should not be entered against him :

1. Because no copy of the mortgage deed is filed with the petition for foreclosure.

2. Because there is no averment in the petition that the mortgage has any words of negotiability or assignability, by which mortgagees were authorized to assign the same.

3. Because a mortgage deed assignable, must be assigned by an instrument or endorsement under the hand and seal of the mortgagee, and if not so assigned, any action thereon must be in the name of the mortgagee for the use of the equitable owner or holder thereof.

4. Because there is no averment in the *rule nisi*, that the mortgage has been assigned in any way, verbally, or in writing.

5. Because there is no profert made, in said rule, of the mortgage.

6. Because no averment or exhibit of debts due to or liabilities incurred by the mortgagee, is made either in the petition or rule.

7. Because the drafts alleged to have been accepted, bear date after the execution of the mortgage.

8. There is no allegation that the drafts accepted were assigned, nor were the demands of the mortgagees assignable, the same being for money advanced and due, if at all, on account.

9. Because the drafts, copies of which are annexed to the rule, were not the anticipated indebtedness and liabilities, which the mortgage was intended to secure or indemnify against.

10. Because no part of the amount or sums claimed to be due, is secured, or was intended to be secured by the mortgage.

All of which were overruled by the Court as insufficient, and defendant excepted.

Counsel for plaintiff, then offered in evidence, first, the copy mortgage, and then the original. Defendant objected on the ground that no profert or exhibit thereof was made in the *rule* served on him, nor filed in office. The objection was overruled and defendant excepted.

Plaintiff next offered in evidence his letters of administration; defendant objected on the ground that no profert thereof was made in the *rule nisi*, although made in the petition. The Court overruled the objection and defendant excepted.

Plaintiff then tendered in evidence the original drafts, copies of which were annexed to the rule, without proving that the drawees or mortgagees had paid or advanced the money on them. Defendant objected on the ground, that the legal presumption was that the drawer had funds in the hands of the acceptor and drawee sufficient to pay the drafts, and the plaintiff *must prove* that they were paid out of the drawees own funds, and then defendant became indebted for money paid and advanced, and not as *drawer* of the bills. The Court overruled the objection and defendant excepted.

The Court ordered the rule to be made absolute, and defendant excepted.

Whereupon council for defendant tendered his bill of ex

ceptions, assigning as error the rulings and decisions above excepted to.

ANDREW R. MOORE, for plaintiff in error.

GARTRELL & GLENN, and BECK, *contra.*

*By the Court.*—LUMPKIN, J. delivering the opinion.

I shall confine my opinion in this case to the only point about which the members of the Court had the misfortune to differ.

The mortgage in this case, bears date 1st of June, 1849, and was made by Lewis to secure Hamilton & Hardeman, for certain funds before that time advanced, as well as to indemnify and save them harmless, "for any advances, acceptances or endorsements made thereafter by them, for and on account of said mortgagor." During the trial, the plaintiffs tendered in evidence the original drafts, copies of which were annexed to the rule, without proving that the drawees or mortgagees had paid or advanced the money on them. Defendant objected to them on the ground that the legal presumption was that the drawer had funds in the hands of the acceptor and drawee sufficient to pay the drafts, and the plaintiffs must prove, that they were paid out of the drawees' own funds, and then defendant became indebted for money paid and advanced, and not as drawer of the bills. The Court overruled the objection and the defendant excepted.

And now the only point about which we disagree is, was the Court right in ruling, that under the facts of this case, the burden of proof was shifted from the shoulders of the plaintiffs to those of the defendant? A majority of the Court hold that the onus was changed, by the very terms of the mortgage, as well as the nature of the transaction between these parties.

No one doubts that ordinarily, the rule of law is, as it was sked to be applied by the defendant in this case., namely;

that if I accept for another person, the presumption is, that I have funds of his in my hands to discharge the draft, and it is incumbent upon me to show the contrary. But what is the express agreement between these parties? Why that this mortgage which was sought to be foreclosed, was not only to secure Hamilton & Hardeman against past advances, but also to indemnify and save them harmless for any advances, acceptances, or endorsements made thereafter by them for and on account of the mortgagee. And they bring into Court and offer in evidence, paper, answering precisely to this description, acceptances made by them, for Mr. Lewis, after the first day of June, 1849. What more is there for them to do? But says the defendant, you must show that you paid the money on these drafts out of your own funds, not out of mine! The ready response is, such was not our understanding, nor my understanding. *In haec federa non veni.* Our contract was that the mortgage was to cover all acceptances made for you after its date. Here are drafts drawn, accepted and taken up by me, since the mortgage was given. I claim the benefit of the bond. I am within its stipulations. You have no right to impose additional labor on me. If I had funds of yours in my hands, show it. You bargained that for all drafts and acceptances taken up by me, after the date of the mortgage, the presumption should be, that they were paid out of our funds. Still you have the right to rebut this *prima facie* case of liability on your part. Failing to do so, I am entitled to foreclose the mortgage for the amount of these claims.

Not only are the words of the mortgage in favor of the plaintiffs, but the inference to be drawn from the nature of the transaction.

What did Hamilton & Hardeman look to for payment after the mortgage was given? To funds to be furnished by Lewis? Certainly not. The taking of the mortgage negatives this conclusion. Had they expected cotton or produce from him the mortgage would not have been taken. It was

required, for the very reason, that they did not expect to be supplied with funds by the drawer. They were willing to advance for him, but they exacted indemnity. They had even advanced when the mortgage was executed. This is admitted upon its face, for it was to secure *past*, as well as prospective advances.

But I will not spend more time upon a point which, to my mind is plain and palpable. I am of the opinion not only that the Court was right, upon every other exception, upon which error is assigned, and about which we all agree, but upon this also.

Judgment affirmed.

BENINNG, J. concurring.

Were any of the objections urged "against the foreclosure of the mortgage," good ?

I do not think that the first was. The mortgage was set forth in the petition, according to its legal effect; and I do not know of any law requiring more to be done than that.

Nor the second. Wayne represented himself as the administrator of the "assignee" of the mortgagees. If this was not a sufficient averment of an assignment, the averment was amendable under the Act of 1854. With this averment sufficient, it would not be necessary for the petition to contain also an averment that the mortgage had "words of negotiability or assignability." The mortgage did in fact have such words; and under an averment of an assignment, it would be admissible as evidence. Under such averments promissory notes and bills of exchange are admitted every day.

Nor the fourth. The assignment *was* in fact, an assignment under trial.

Nor the fifth; for the reasons mentioned in disposing of the second.

Nor the sixth. The omission of a profert was remediable

Lewis vs. Wayne, adm'r.

by amendment. The mortgage, it seems, was present, ready to be shown, if called for. This was the matter of substance.

Nor the seventh. The petition, it seems, gave copies of the drafts, without giving copies of the endorsements and acceptances. But endorsements and acceptances existed. Copies of them, and of the drafts, are contained in the transcript; whereby it appears, that the mortgagees had incurred liabilities for the mortgagor, to the amount alleged in the petition. These omissions in the petition, then, were remediable by amendment.

Nor the eighth. The mortgage itself contemplates future advances.

Nor the ninth. It was not necessary that the drafts should be "negotiable;" or that "the money paid (if ever paid,) or the amount thereof *due* by open account, if at all," should be "assignable." The drafts were drawn on the mortgagees, and were accepted and paid by them. This raised an *account*, nothing else, in their favor, against Lewis. In fact, however, the drafts *were* negotiable; and they were negotiated; they were drawn by Lewis, payable to his own order, and were endorsed by him.

Nor the tenth. This consists of matter of fact, and there does not appear to have been any proof to support it: on the contrary, there was proof to oppose it; viz: the mortgage itself, which contemplates future advances to be made by the mortgagees, to the mortgagor.

Nor the eleventh; which is but a repetition of the tenth.

These were all of the objections urged "against the foreclosure of the mortgage," (by way of demurrer I suppose,) and they are all, I think, quite insufficient.

If these objections to the pleading were insufficient, the objection to the admission of the mortgage in evidence, must also have been insufficient.

A profert of the letters of administration, if necessary, might have been added to the rule at any time. There was a profert in the petition.

We might as well make up our minds, to accept the amendment Act of 1854.

I think the letters were admissible.

The drafts, together with the endorsements, the acceptances, and the protests for non-payment by the acceptors, and the mortgages, were read as evidence by the counsel for Wayne, the petitioner. They introduced no further evidence.

The counsel for Lewis objected to this evidence as insufficient, insisting, that it was not sufficient to show, that the mortgagees, the acceptors of the drafts, had ever paid the drafts at all; or that if it was sufficient to show this, it was not sufficient to show, that they had paid the drafts out of their own money. The Court overruled the objection.

This is a point entitled to notice.

I think that the Court was right. The drafts were protested for non-payment *by the acceptors.* This shows, that the drafts had got into circulation *after acceptance.* At the time of the trial, the drafts had got back into the hands of the acceptors. How did they get back there? The acceptors must have paid them. This is the presumption.

So, I think that the evidence *was* sufficient to show, that the acceptors had *paid* the drafts.

Was it sufficient to show, that they had paid the drafts out of their own funds, and not out of the effects of the drawer in their hands? I think so, not however with entire confidence in the opinion.

The *mortgage*, it is clear from its face, contemplates *advances—accommodation* acceptances, to be made by the drawer, does it contemplate any other sort? I hardly think so. Indeed, what use would there be for a mortgage, if the case was one, in which the acceptances were to be acceptances founded on effects of the drawer in the hands of the drawee, at the time of acceptance.

And then, if the fact was, that the acceptors had effects of Lewis, out of which they might have paid the drafts, why did he not show the fact? It would have been easy for him

to do so.    And it was a matter in relation to which it was he that held the affirmative.

There is enough here, I think, to raise a *prima facie* case, that the acceptors paid the drafts *out of their own funds*.

Upon the whole, then, I go for affirming the judgment of the Court below.

McDONALD, J. dissenting.

The plaintiff in error executed to Hamilton & Hardeman a mortgage to secure them against certain liabilities which they had incurred on his account prior to the date of the mortgage, and to indemnify them against loss for such acceptances as they might make for him thereafter.    The mortgage bore date on the first day of June, 1849.    The mortgage had been assigned to the intestate of the defendant in error.

This is a petition and *rule nisi* calling on the mortgagor to show cause why the mortgage should not be foreclosed ; and the debts claimed to be entitled to satisfaction from the mortgaged property, are certain drafts drawn by the mortgagor on the mortgagees and accepted by them, bearing date respectively, 31st Dec. 1851; June 3d, 1852 ; Jan. 10th, 1852 ; Jan. 13th, 1852; Jan. 27th, 1852 ; Feb. 12th, 1852 ; Feb. 21st, 1852; Feb. 28th, 1852.

The mortgagor showed for cause ten objections to the foreclosure.    The ninth objection is that the drafts were not given on account of any of the anticipated or future liabilities or indebtedness mentioned in the petition or *rule nisi*, and avers that there was no lien created by the mortgage by reason of said liability.

The tenth alleges that no part of the money claimed to be due was intended to be secured by the mortgage.    The Court below overruled all the objections.    The plaintiff in error excepted to its judgment and this Court affirms it.

I have the misfortune to dissent from the judgment of the majority.    The plaintiff in error does not deny the execution

of the drafts, and therefore he is not required to file the objection he makes under oath.   He does not insist that the drafts, or any of them, as mortgage debts, have been paid in whole, or in part, so that an affidavit of that fact is not necessary.   The judgment of the Court below, as understood here, was that, notwithstanding the objections filed and the issue made thereby, the defendant in error was entitled to his rule absolute without proof that the drafts or acceptances, were the debts secured by the mortgage.

The plea, or whatever it may be called, of the mortgagor certainly puts that matter in issue, and the mortgagees, or their assignee, like every other plaintiff, ought to be required to make out his or their case by proof.   The mortgage was given for the purpose of securing the mortgagees for sums of money which they had theretofore paid, and which they might thereafter pay for and on account of the mortgagor in discharge or payment of debts and judgments against him, or which he had been or might be enabled to discharge by their acceptances, or other of their means, and to fully indemnify and save harmless the mortgagees from all losses from liabilities by them incurred by acceptances of drafts, checks, endorsements of notes, or by any other notes or means on his account, and from all losses which may happen or accrue from, or in the purchase and sale of cotton, or by any other means where liabilities have been or may yet be incurred by the said mortgagees on account of the said mortgagor in extending aid and credit, or assistance to him in cotton or other trade and operations.

No debt due by mortgagor to mortgagees is described in the mortgage.   It is vague and uncertain as to any specific debt or liability of mortgagor to mortgagees.   The drafts all bear date more than two years after the execution of the mortgage, and it is not even averred in the *rule nisi* that they are the liabilities against the payment of which, it was intended to indemnify the mortgagees.

My opinion is that it cannot be presumed from the facts

stated and admitted in the pleadings, and from them we must judge as the case is presented here. I think therefore, that the judgment of the Court below ought to be reversed.